Gary KNOP, John Ford, William Lovett, II, Ramando Valeroso, Gus Jansson, Pat Sommerville, Vernard Cohen, T. Jon Spytma, Robert Shipp, Butch Davis, Ron Mixon, and Kerwin Cook, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Perry M. JOHNSON, Robert Brown, Jr., Dale Foltz, John Jabe, Theodore Koehler, John Prelesnik, and Jack Bergman, Defendants.

No. G84–651.

United States District Court, W.D. Michigan, S.D.

Aug. 20, 1987.

See also 667 F.Supp. 467.

Elizabeth Alexander, Adjoa Aiyetoro, & Nkechi Taifa-Caldwell, Nat. Prison Project, Washington, D.C., Patricia Streeter, Detroit, Mich., for plaintiffs.

Thomas Nelson, Brian McKenzie, David Edick, Michigan Office of the Attorney General, Lansing, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

There are ten motions pending before the Court in this case: (1) plaintiffs' motion for sanctions under Rule 11 of the Federal

Rules of Civil Procedure; (2) defendants' February 25, 1986 motion for partial summary judgment regarding jobs, idleness, rehabilitation, and education; (3) defendants' February 25, 1986 motion for partial summary judgment regarding recreational activities; (4) defendants' February 25, 1986 motion for partial summary judgment regarding sanitation; (5) defendants' February 25, 1986 motion for partial summary judgment regarding medical care; (6) defendants' February 25, 1986 motion for partial summary judgment regarding unsafe food; (7) defendants' February 25, 1986 motion for partial summary judgment regarding fire and smoke hazards; (8) defendants' February 25, 1986 motion for partial summary judgment regarding overcrowding; (9) defendants' February 25, 1986 motion for partial summary judgment regarding classification; and (10) defendants' February 25, 1986 motion for partial summary judgment regarding mental health care. The Court had withheld decision on defendants' motions for partial summary judgment pending the conclusion of the trial on the severed issues. Since that trial is over, I believe that I should decide these motions before the parties expend too much time and money on the remaining issues without the benefit of my thoughts on them. For the reasons discussed below, the Court will grant in part and deny in part plaintiffs' motion for sanctions, and will deny the remaining motions.

## I. *Plaintiffs' Motion for Sanctions under Rule 11*

On February 25, 1986, the deadline Magistrate Rowland had established for the filing of substantive motions in this case, defendants filed twenty motions regarding various aspects of plaintiffs' case. In a bench opinion rendered on June 2, 1986 the Court decided ten of those motions, and ordered defendants to show cause why it should not sanction them under Rule 11 of the Federal Rules of Civil Procedure for having filed six of those ten motions without the "requisite belief formed after reasonable inquiry that they were well grounded in fact or warranted under existing law." Transcript of June 2, 1986 Hearing at 66. In addition, the Court indicated that it also was considering sanctioning defendants for having filed their "motions with the intent to harass or delay the plaintiffs' [pursuit of] ... their claims, and not because the motions ... had any merit." *Id.* at 67. The parties have filed memoranda in support of their positions on this issue.

█ Rule 11 provides in pertinent part as follows:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11. The Advisory Committee Notes explain that the rule "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances." *Id.* Advisory Committee Notes. The Committee also observed, however, that although the new standard "is more stringent than the original good-faith formula", "[t]he rule is not intended to chill

an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* It cautioned that courts are "expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* If a court finds that an attorney has violated rule 11, however, it has no choice but to impose sanctions, although it does enjoy wide discretion in "deciding the nature and extent of sanctions to impose." *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.,* 815 F.2d 391, 401 (6th Cir.1987).

The Sixth Circuit recently stated that "[t]he conduct of counsel that is the subject of sanctions will be measured by an objective standard of reasonableness under the circumstances." *Id.* Using this objective standard, a court must impose sanctions "if a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174 (D.C.Cir.1985). Defendants argue here that the Court cannot sanction them for having filed legally untenable motions unless it determines that the motions were "frivolous" and lacked even "arguable merit." There is some case law support for this position. *See Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985) (rule 11 has been violated "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands"). A court must apply the frivolous standard, however, in light of rule 11's measure of a competent attorney who has conducted a reasonable inquiry into the issues:

> A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after "reasonable inquiry." Such inquiry is that amount of examination into the facts and legal research which is reason-

able under the circumstances of the case. Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions.

> ... [W]e affirm that Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper is not filed in subjective bad faith.

*Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986). A court must take care, though, in applying rule 11 not "to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Eastway Construction Corp.,* 762 F.2d at 254.

In addition to motions that are legally untenable, rule 11 applies to motions that are filed "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11. The Ninth Circuit Court of Appeals has observed that "the conduct forming the basis of the charge of harassment must do more than in fact bother, annoy or vex the complaining party. Harassment under rule 11 focuses upon the improper purpose of the signer, objectively tested, rather than the consequences of the signer's act, subjectively viewed by the signer's opponent." *Zaldivar,* 780 F.2d at 831–32. The Ninth Circuit also noted in *Zaldivar,* although it did not decide the issue, that "[t]he filing of excessive motions ..., even if each is well grounded in fact and law, may under particular circumstances be 'harassment' under Rule 11...." *Id.* at 832 n. 10. One can argue strongly, moreover, that the filing of excessive motions that are not well grounded in fact or law does constitute harassment under rule 11.

With these standards in mind, the Court will examine defendants' motions and the propriety under rule 11 of their decision to file twenty potentially dispositive motions on the last day they could do so. This discussion is composed of two parts. First,

I will discuss whether defendants filed the six motions I cited in my June 2nd bench opinion with the requisite "knowledge, information, and belief formed after reasonable inquiry" that they were "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Next, I will examine whether defendants interposed their twenty motions "to harass or to cause unnecessary delay or needless increase in the cost of litigation." I observe that defendants have had ample opportunity to defend their position. *See INVST Financial Group, Inc.*, 815 F.2d at 405. I also observe that I will not reiterate the legal discussions contained in my June 2nd bench opinion, but rather simply will supplement those discussions to the extent necessary to determine whether defendants' six motions were legally untenable or frivolous.

The first motion the Court will discuss is defendants' motion to dismiss based on their efforts under the Consent Decree entered in the case of *United States v. Michigan*, No. G84–63 (W.D.Mich.), to enhance the conditions of confinement in their prisons. Defendants argued that under *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), they were entitled to have the Court grant their motion. In their response to the Court's show cause order, defendants argue that their motion was not frivolous because "[t]he exact dimensions and contours of the Eleventh Amendment doctrine ... is not at all clear"; that to sanction them would be "pernicious to the development of the Eleventh Amendment doctrine"; that they were merely seeking to determine whether plaintiffs intended to litigate conditions that had been corrected; and that they partially succeeded in their motion since the Court stated in its June 2nd opinion that plaintiffs could litigate only those conditions of confinement that existed as of the time of trial.

■ The Court rejected defendants' motion in its June 2nd opinion, and it now finds that defendants filed this motion in violation of rule 11. I base this finding on

several grounds. First, although *Green* clearly was distinguishable from this case because in *Green* it was undisputed that a change in federal law had mooted plaintiffs' claim while here the factual issues were (and still are) hotly contested, defendants made little effort to place this case within the factual context of *Green* or other Eleventh Amendment decisions. Indeed, defendants' motion consisted of little more than a page of discussion, which they supplemented with a three-page reply to plaintiffs' responsive brief. Secondly, defendants made no attempt to delineate what conditions of confinement should be removed from this case, or to justify under the applicable constitutional standards the conditions that existed in their institutions in February 1986. They made no showing in their motion, by affidavit, exhibits, or otherwise, either of (a) "alleged constitutional violations which have been corrected" or (b) "alleged constitutional violations which are subject to the consent decree in *USA v. Michigan* and corrections pursuant to terms of the decree and under control of this court." Defendants' Motion at 3. They in essence requested the Court to rule in a factual vacuum and to issue an advisory decision that plaintiffs cannot litigate conditions that no longer exist when they did not demonstrate in their motion that plaintiffs intended to do so. Defendants produced no evidence that plaintiffs intended to litigate changed conditions in violation of *Green,* and the Court, for the reasons stated above and in its June 2nd bench opinion, accordingly must find that they filed their motion in violation of rule 11. I have attached a copy of defendants' motion and reply brief to this opinion as examples of what the Court considers to be sanctionable filings.

The next motion the Court will consider is defendants' motion to dismiss under the Eleventh Amendment. In this motion, defendants again argue that the Court should dismiss plaintiffs' action, excepting only plaintiffs' claims regarding the lack of toilets at the Riverside Correctional Facility and racial discrimination at the Central Complex of the State Prison of Southern Michigan, because of the efforts they are

taking pursuant to the Consent Decree in the *United States v. Michigan* proceeding. For many of the same reasons I gave above concerning the preceding motion, I find that defendants filed this motion in violation of rule 11. The Court bases its finding basically on two grounds. First, defendants made no effort in their motion to demonstrate (1) that they had corrected the conditions of which plaintiffs complain and (2) that their corrections were sufficient to satisfy applicable constitutional standards. Once again, they requested the Court to rule in a factual vacuum and to issue an advisory opinion. Secondly, and more importantly, defendants were well aware that they had resisted allowing the plaintiffs to intervene as a party in the *United States v. Michigan* proceeding, that the Consent Decree specifically provides that it will have no effect on plaintiffs' case, and that the Decree did not decide whether defendants are housing inmates in unconstitutional conditions of confinement. The issues defendants raised in their motion are issues to be proved at trial, not a basis for a motion to dismiss. Defendants should be sanctioned under rule 11 for having filed this motion.

■ The third motion the Court will discuss is defendants' request that the Court dismiss the action against them in their official capacities. The Court discussed this motion's lack of merit in its June 2nd bench opinion, and will not repeat that discussion here. See Transcript at 20–25. If defendants had wanted the Court to forge new Eleventh Amendment doctrine, they should have said so and should have demonstrated that their motion presented a "good faith argument for the extension, modification, or reversal of existing law." They did not do so. I still fail to understand the grounds for this motion. Plaintiffs are suing defendants in their official capacities because defendants act toward them in those capacities; *e.g.,* Director Brown implements policy and otherwise takes or fails to take actions concerning the plaintiffs in his official, not his individual, capacity. Allowing plaintiffs to maintain an official capacity action neither allows them to proceed under the doctrine of *re-*spondeat superior* nor allows them to hold present defendants accountable for the actions of former defendants, and there is no evidence they are trying to do so. The Court thus does not believe that defendants brought this motion in objective good faith.

■ Defendants' next motion is that the named plaintiffs lack standing to bring this action. In essence, they presented two arguments here. First, they argued that the named plaintiffs are not suffering the injuries claimed in plaintiffs' first amended complaint. Secondly, they argued that plaintiffs' allegations are conclusory. Although this motion presents a close question under rule 11, the Court believes that it passes muster. While the Court found in its June 2nd opinion that plaintiffs' first amended complaint is proper under the Federal Rules of Civil Procedure, it agreed with defendants that the complaint could have been more specific. The question of whether the named plaintiffs adequately represent the class, moreover, is one on which reasonable persons can differ and is always open to dispute. *See* Fed.R.Civ.P. 23(c)(1).

Defendants' fifth motion concerns plaintiffs' claim of racially discriminatory treatment. In this motion, defendants devoted four pages to their discussion of this complex issue. In support of the motion, defendants submitted two affidavits and various policy directives and guides. One affidavit was from Daniel Bolden, the Department's Deputy Director for the Bureau of Correctional Facilities. Mr. Bolden stated that racial discrimination is prohibited by official policy and that inmates may seek redress for claims of racial discrimination through the grievance procedure. The second affidavit was from Jack Boyett, the Department's Personnel Director. Mr. Boyett stated that employees are prohibited from engaging in acts of racial discrimination and that the Department has a successful affirmative action policy for its employees. In their brief, defendants do not explicitly deny that racial discrimination occurs in the subject institutions, but rather present the defense that they are doing

everything within their power to prevent discrimination from occurring.

■ The Court rejected defendants' motion in its June 2nd bench opinion, and now finds that defendants filed this motion in violation of rule 11. I find it difficult to believe that defendants expected me to take their motion seriously. Racial discrimination is a difficult and complex issue that often-times requires detailed analysis of the law and facts. In moving for summary judgment, moreover, a party bears the burden of establishing that there exists no genuine issue as to any material fact. Neither Mr. Bolden nor Mr. Boyett stated in their affidavits that inmates at the subject institutions do not suffer from racial discrimination. They asserted only that official policy prohibits racially discriminatory practices. Whether official policy is followed, however, is a different story, and it is a story the affiants did not address in their affidavits and which defendants did not address in their brief. Defendants' motion does not represent a considered and thoughtful discussion of plaintiffs' racial discrimination claim, and in my opinion does not indicate that defense counsel made the requisite inquiry to determine whether the motion was "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." The Court in particular finds defendants' conduct sanctionable under rule 11 because by February 25, 1986 the parties had engaged in considerable discovery and defendants thus had ample material to analyze in meeting their initial burden of demonstrating that no genuine issue as to any material fact existed.

■ The final motion the Court will discuss is defendants' motion for the appointment of a special master pursuant to rule 53 of the Federal Rules of Civil Procedure to conduct the trial. This motion presents a close question under rule 11. Defendants based their motion in part on their belief that the Court may have been prejudiced by its involvement in the *United States v. Michigan* proceedings. As plaintiffs note, this argument in essence represents a reversal in defendants' earlier position on this issue, when they opposed plaintiffs' motion to transfer this action to the Eastern District of Michigan. The motion also is troublesome in light of the Supreme Court's strong admonition in *LaBuy v. Howes Leather Co.* against district court judges referring a case to a special master for trial on the merits. *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 256–59, 77 S.Ct. 309, 313–15, 1 L.Ed.2d 290 (1957). I nevertheless cannot find that defendants filed this motion in violation of rule 11. Defendants' motion had sufficient merit to pass muster under the rule.

■ In addition to determining whether defendants had filed individual motions in violation of rule 11, the Court must examine whether defendants "interposed" their motions "for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11. Applying an objective standard to defendants' conduct, see W. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 195–97 (1985), the Court has determined that defendants did interpose their motions for an improper purpose. The Court bases this determination on four factors.

First, defendants filed twenty potentially dispositive motions on the last possible day they could do so. As plaintiffs observe in their memorandum in support of rule 11 sanctions, defendants apparently could have spaced their motions out a bit; it indeed is hard to believe that none of the motions was ready to be filed prior to the 25th. Defendants' decision to wait until the last day to file these motions, when the parties were busily engaged in last minute discovery and a trial date was near, raises significant doubt as to their purpose in doing so. Secondly, the Court has considered the substance and merit of the motions defendants filed on that day. I already have found that defendants filed four of those motions in violation of rule 11. Most of the other motions defendants filed that day, moreover, were not much better in terms of substance and merit. A

court reasonably may question the propriety of filing on one day twenty motions that are, for the most part, not well supported by briefs, memoranda, and other documentation.

Thirdly, defendants refused to give plaintiffs an unconditional extension of time in which to respond to the motions. Finally, the Court considered defendants' conduct throughout this litigation in determining whether they had filed their February 25th motions for an improper purpose within the meaning of rule 11. The trial transcript documents the Court's concerns regarding the inability of the attorneys for both parties to interact in a professional manner. The numerous discovery proceedings conducted by Magistrate Rowland further evince the parties', and in particular defendants', inability to cooperate with each other in good faith. The Court has no interest in whether the attorneys like each other personally or respect each others' legal abilities. When personal animosity spills over into the courtroom, however, as it apparently did when defendants decided to file twenty motions on February 25, 1986, the Court does become interested. Rule 11 was drafted in part to prevent this kind of conduct and burden on the Court.[1]

---

1. Unfortunately, defendants far too often filed motions and briefs with the Court that did little to clarify the issues and imposed an undue burden on the Court, as well as on the plaintiffs. Many of defendants' submissions reflected careful thought and research on the issues. Several others, however, were hurriedly and sloppily written and organized, and failed to present clearly defendants' request for relief and the bases for the request. An example of this is defendants' First Motion in Limine and Standing Objections to Plaintiffs' Proposed Exhibits and Testimony, which they filed on May 22, 1986. In their motion, defendants properly listed the exhibits and proposed testimony to which they had objections and the grounds for their objections. In their brief in support of the motion, however, defendants failed entirely to discuss the legal support for their request or, for each document or even each group of documents, why the Court should grant their motion. The following is defendant's entire brief in support of their motion:

"The format of this brief parallels the format of the Motion. In support of Defendants' First Motion in Limine and Standing Objection, Defendants rely upon the following authorities.

A. Rules 103, 104, 105, 401, and 402 of the Federal Rules of Evidence and Rule 403 of the Federal Rules of Civil Procedure.

B. Rules 106, 901, 1002 and 1005 of the Federal Rules of Evidence.

C. Rule 407 of the Federal Rules of Evidence.

D. Rules 802 and 803(8) of the Federal Rules of Evidence.

E. Rules 32(a)(1) and (3) and 32(b) of the Federal Rules of Civil Procedure, and *Baylor v. Jefferson County Board of Education,* 733 F.2d 1527 (11th Cir., 1984).

F. Rule 32(a)(1) and (2) of the Federal Rules of Civil Procedure.

G. Rules 401, 402 and 403 of the Federal Rules of Evidence.

II.

A. Rules 401, 402 and 403 of the Federal Rules of Evidence and Rule 15(b) of the Federal Rules of Civil Procedure. Defendants neither expressly or implicitly consent to trial on any issues not raised in the pleadings. If this Court allows an amendment, Defendants request a continuance to enable Defendants to meet whatever new issues are raised. Defendants reserve the right to name new witnesses including expert witnesses, and conduct further discovery on Plaintiff Class as well as submit any relevant exhibits concerning any new issues raised by an amendment to the pleadings.

B. *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Pollnow v. Glennon,* 757 F.2d 496, 501 (2nd Cir., 1985).

C. *Hays v. Jefferson County, Kentucky,* 668 F.2d 869, *rehrg. den.,* 673 F.2d 152 (6th Cir.), *cert. den.,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Sommer v. Dixon,* 709 F.2d 173 (2nd Cir., 1983).

D. *Ruiz v. Estelle,* 679 F.2d 1115, amended in part, vacated in part on other grounds, 688 F.2d 266, *cert. den.,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (5th Cir., 1982); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Pembaur v. Cincinnati,* 475 U.S. 469, ——, n. 11, 106 S.Ct. 1292, 1299, n. 11, 89 L.Ed.2d 452, 464, n. 11 (1986).

E. *Pennhurst State School and Hospital, et al. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908).

F. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

G. *Spomer v. Littleton,* 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974); *Mayor of the City of Philadelphia v. Educational Equality League,* 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); *Rizzo v. Goode, supra.*

H. Defendants incorporate by reference the Brief in Support of Motion for Partial Summary Judgment filed on February 25, 1986 addressing the issues of unnecessary remedies.

WHEREFORE, Defendants respectfully request this Court to enter an order precluding the use of any evidence objected to by Defendants

For all of the above reasons, the Court finds that it should sanction defendants under rule 11 of the Federal Rules of Civil Procedure. I now must decide on an appropriate sanction. The Sixth Circuit recently stated that the goals of rule 11 are "the deterrence and punishment of offenders and the compensation of their opponents for expenditure of time and resources responding to unreasonable pleadings or motions." *INVST Financial Group, Inc.*, 815 F.2d at 404. The Sixth Circuit went on to provide guidance for courts who decide to award the opposing party the reasonable expenses it incurred because "of the filing of the pleading, motion, and other paper."

> [I]n order to award the fees sought by plaintiff's counsel ..., the court must

find that the actions for which fees are sought were reasonably necessary to defend against the motions. A reasonableness inquiry necessarily requires a determination as to what extent plaintiff's expenses and fees could have been avoided and were self-imposed. When counsel is called upon to defend against its adversary's unreasonable motion practices, he must mitigate damages by correlating his response, in terms of hours and funds expended, to the merit of the claims. The mitigation requirement prevents a party from misusing rule 11 sanctions in order to benefit from the errors of opposing counsel.... The district court is therefore required to balance carefully these competing interests in determining the amount of sanctions.

> or alternatively, to treat these objections as standing objections."

Many of the briefs that defendants filed with the Court, moreover, obviously had not been reviewed and proofread before being filed. A prime example of this is defendants' May 15, 1987 Memorandum Regarding Race Discrimination, which contained the following sentences and paragraphs. The Court has taken these sentences and paragraphs verbatim from the document defendants filed, *i.e.* sic has been ommitted.

> Defendants do not condone or tolerate use of racial slurs by staff (T–3/17/87, 158; T–3/17/87, 213). In this regard, there is no order of any claims of racial slurs by custody officers, black corroboration that occur in the context of issuance of misconduct reports T–3/17/87, 141–52).

Memorandum at 2.

> *Defendants generally assign prisoners to segregation on the basis of race.* Protective segregation is voluntarily self-selected and granted upon request of the inmate (T–3/16/87, 87). Punitive segregation is a result of the disciplinary hearing process which includes independent staff review of tickets and a hearing before an independent, attorney hearings officer. Assignment to administrative segregation as a result of decisions by the classification committee based on the record of inmate behavior (T–3/16/87, 84).

*Id.* at 3 (emphasis supplied).

Plaintiffs offered no rebuttal evidence to this testimony. Ms. Camp's testimony, along with that of Dan Bolden and Director Brown, the only three corrections experts that testified on the issue of dining hall, were uniformly of the opinion that an attempt to make inmates enter or sit in the dining hall in a nonself-selecting manner would have significant potential for disruption of the institution.

> Thus, the uncontested testimony of the corrections experts is that such an approach would be counter-productive and dangerous.

*Id.* at 8.

> As to Plaintiffs' first claim, racial slurs, Defendants do not tolerate racial slurs and have taken action against employees who engage in this type of conduct. Obviously, Defendants cannot withdraw to bigger reach of the 9,000 employees in the Department of Corrections at all times, but fails to establish that there is a pattern and practice of racial derogatory remarks which Defendants have chosen to ignore. There is thus no basis for supervisory liability under the circumstances.

*Id.* at 9.

> ... Nothing in Defendants' policy or practice encourages or otherwise sanctions separation of racial groups in the dining areas. The evidence, in fact, not only supports a conclusion that were such separation does occur it is the result of self-selection.

*Id.* at 10.

> Almost all respective, it is obvious that the dynamics of population balance within the institution represent another significant factor in determination of the composition of the segregation population.

*Id.* at 11–12.

I think I have the right to expect that defense counsel will at least proofread their motions, memorandums, and briefs before they file them with the Court. I expect briefs to contain an occasional typographical error, and I recognize that each attorney has his or her own style of writing. All too often, however, defendants' submissions reflected not these factors, but rather sheer carelessness and indifference. I have to spend time reading defendants' submissions—I would think that they would care enough about their work to send me the best product they can prepare.

*Id.* at 404 (footnote and citations omitted). Rule 11 expressly provides, of course, that an award of the opposing party's reasonable expenses, including a reasonable attorney's fee, is only one possible sanction. A district court, moreover, is given wide discretion "in deciding the nature and extent of sanctions to impose." *Id.* at 401.

■ In this case, since the Court has found that defendants violated rule 11 in two different ways, it believes that it should impose two different santions on them. With regard to the four motions that defendants filed in violation of rule 11, the Court will award plaintiffs the reasonable expenses they incurred in defending against such motions. The Court also believes that a monetary sanction is appropriate for defendants having filed their February 25th motions for an improper purpose. Such a sanction will partially compensate plaintiffs for any unnecessary burdens they incurred in responding to such motions at that time and will act as a deterrent to defendants engaging in such conduct in the future.

Plaintiffs request an award of $10,150.00 in fees and expenses as a sanction against defendants. With regard to the four motions that defendants filed in violation of rule 11, the Court believes that an award of $6,165.00 is appropriate. This award is composed of two parts. First, the Court awards plaintiffs $3,165.00 in attorney's fees for having to respond to the four motions. This award is composed of $1,462.50 for Ms. Alexander's fees (9.75 hours at $150.00 per hour); $1,562.50 for Ms. Aiyetoro's fees (12.50 hours at $125.00 per hour); and $140.00 for Ms. Lipkin's fees (3.5 hours at $40.00 per hour). I find that plaintiffs reasonably incurred these fees in defending against the four motions. Secondly, the Court awards plaintiffs $3,000.00 in attorney's fees for having to prepare their rule 11 briefs. This award is based on twenty (20) hours of preparation time for Ms. Alexander at a rate of $150.00 per hour. I credit plaintiffs with only twenty (20) hours of preparation time, when they asked for 33.75 hours, because they only partially succeeded on their motion.

With regard to defendants having filed their motions for an improper purpose, the Court believes that a monetary award to plaintiffs of $2,500.00 is appropriate. This amount may not seem like much, but the Court will assess it directly against defense counsel, and not their clients, in the hope that it will deter such conduct from recurring.

■ As a final note, the Court observes that plaintiffs repeatedly have requested it to strike the form affidavits defense counsel almost invariably attach to their motions, and to preclude defendants from continuing to use the affidavits. These affidavits are meaningless to the Court and I have no idea why defendants use them. They tell me nothing and I attach no weight to them. I nevertheless see no basis for ordering defendants not to use them if they wish to, and thus will deny plaintiff's request.

## II. *Jobs, Idleness, Rehabilitation, and Education*

Plaintiffs' first amended complaint states in pertinent part as follows:

### B. *Protection from Harm*

51. Jackson, Marquette, and Ionia suffer from an atmosphere of violence. Inmate/inmate attacks, including stabbing, are commonplace at Jackson.

52. The prisons lack employment, educational and recreational opportunities, resulting in pervasive idleness. The lack of meaningful inmate programming contributes to the level of violence at the institutions.

First Amended Complaint ¶¶ 51 & 52. Defendants seek to dismiss this "claim" for two reasons. First, they argue that plaintiffs have no constitutional right to jobs or to education, or to participate in a rehabilitation program, and that the lack of such programming thus does not violate the Constitution. Secondly, they argue that plaintiffs cannot circumvent this rule by attempting to attach this claim to their inmate violence claim. Plaintiffs respond that their claim is proper for two reasons.

First, they contend that although a lack of programming does not violate the Constitution, the unreasonable level of violence at the institutions does violate it and the Court should consider the lack of programming as a factor influencing the level of violence. Secondly, they contend that if the Court finds that unconstitutional levels of violence exist in the institutions, it can order defendants to provide inmate programs as part of its remedy.

The Court does not believe that plaintiffs are claiming that a lack of programming by itself violates the Constitution. They state that they are not pursuing such a claim, and there is no basis in the case law for one. *See Rhodes v. Chapman*, 452 U.S. 337, 348, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1254–55 (9th Cir.1982). The issue, rather, is whether the Court should strike plaintiffs' allegations concerning programming from the complaint and should preclude plaintiffs from introducing testimony and other evidence on that issue at trial. The Court finds that it should not do so for two reasons.

■ First, both the Supreme Court and the Sixth Circuit have stated that in assessing whether conditions of confinement deprive inmates of life's necessities (*e.g.* personal safety) in violation of the Eighth Amendment, a court must consider "all the prison's conditions and circumstances, rather than isolated conditions and events." *Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir.1985); *see Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399 ("[c]onditions ..., alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities"). If plaintiffs establish, for example, that excessive idleness has led to rampant inmate violence at the institutions, then I do not believe that I am precluded from taking remedial action simply because inmates have no constitutional right to adequate programming. *See id.* at 348, 101 S.Ct. at 2400 (noting that the district court had not found that double celling had increased "violence among inmates"); *see also Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 999 (3d Cir.1983) (in

evaluating whether inmates have been deprived of their right to habitable shelter, a court must consider "all those circumstances that bear on the nature of the *shelter* afforded to sentenced inmates") (emphasis in original), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). Under such circumstances, the conditions of confinement would violate the inmates' constitutional right to at least some modicum of personal safety. Secondly, the Court may be able to consider inmate programming as a possible remedy for unconstitutional levels of violence. *See Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978). Although this kind of remedy certainly would not be automatic even if I were to find a constitutional violation, and would depend on the circumstances, the Court believes that it should allow plaintiffs to present evidence on lack of inmate programming and idleness in deciding whether unconstitutional levels of violence exist at the institutions. I therefore will deny defendants' motion for partial summary judgment.

### III. *Recreational Activities*

Defendants' second motion for summary judgment also is directed at paragraphs 51 and 52 of plaintiffs' first amended complaint. They argue in this motion that the Court should dismiss plaintiffs' claim of lack of adequate recreational opportunities because inmates in the Michigan system receive adequate recreational opportunities, and because under *Hoptowit* and *Walker* plaintiffs cannot combine conditions of confinement to create an unconstitutional totality of conditions. The Court will deny defendants' motion for two reasons.

■ First, as plaintiffs assert, a total denial of recreational opportunities may violate the Constitution. *See Walker*, 771 F.2d at 927–28; *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983). The parties dispute what the State Plan for Compliance in the *United States v. Michigan* proceeding, No. G84–63 (W.D.Mich.), requires of defendants in this area. The Court's concern at this point, however, is not what the State Plan requires but rather whether in-

mates in the subject institutions are completely denied recreational activities in violation of the Constitution. On that constitutional issue, defendants have not satisfied their initial burden under rule 56(c) of demonstrating that there exists no genuine issue as to any material fact. Secondly, the Court believes, as it discussed above concerning defendants' first motion, that the level of recreational activities available to the inmates is relevant to plaintiffs' claim that the inmates suffer from excessive violence. I agree with defendants that the Sixth Circuit rejected a true "totality of conditions of confinement" approach in *Walker*. Plaintiffs cannot succeed on the merits of their case if they are unable to establish that defendants' actions have deprived them of life's necessities, *i.e.*, they cannot aggregate constitutional conditions of confinement to create an unconstitutional condition of confinement. I interpret the Sixth Circuit's admonition in *Walker*, however, that a court must consider "all the prison's conditions and circumstances," *Walker*, 771 F.2d at 925, as requiring me to examine all facets of the institutions' operations that are relevant to the issue of whether the inmates suffer from unconstitutional levels of violence.

The evidence produced at trial may not support plaintiffs' claim that they lack adequate recreational opportunities, or their claim that the Court should order additional recreational programs as a remedy for any unconstitutional levels of violence that may exist. At this point, though, my sole concern is whether I should strike plaintiffs' allegations concerning inadequate recreational opportunities from the complaint, or rather allow them to present testimony on that issue at trial. Under *Rhodes* and *Walker*, I believe that I should allow plaintiffs to present this testimony at trial, unless of course defendants can establish in accordance with the requirements of rule 56 that plaintiffs' recreational opportunities are sufficiently adequate that they bear no relation to any possible unconstitutional levels of inmate violence. For the above reasons, the Court will deny defendants' second motion for partial summary judgment.

## IV. *Sanitation*

In their next motion defendants challenge plaintiffs' assertions, contained in paragraphs 38, 41, and 46 of the first amended complaint, that sanitary conditions at the subject institutions are constitutionally inadequate. Defendants make numerous factual assertions in their brief that are utterly unsupported by any citations to the record or to admitted facts in other cases. As I stated previously in this opinion, I view the form affidavit defendants attached to their motion as being meaningless. Since defendants have not satisfied their burden under rule 56 of establishing that there exists no genuine issue as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 277 (1986) (White, J., concurring), the Court will deny their motion for partial summary judgment on the sanitation issue.

## V. *Medical Care*

Defendants direct their fourth motion for partial summary judgment toward plaintiffs' claims that they are denied access to adequate medical care. First Amended Complaint ¶¶ 57–62 & 73. In support of their motion, defendants argue that the fact they have budgeted $35,524,000 for the delivery of health care services to the inmate population, and that they employ 17.7 full-time physicians, 129 physician's assistants, and 124.6 nurses at the subject institutions, indicate that they are not deliberately indifferent to the inmates' serious medical needs. Defendants support their factual assertions with affidavits from the Director of their Office of Health Care, the Fiscal Coordinator for the Bureau of Health Care Services, and the Associate Director of Health Care. In response to this motion, plaintiffs argue that the Court must consider the overall situation at the institutions to determine what level of budgeting and staffing is necessary for defendants to provide adequate medical care to the inmates, and in addition contend that serious problems exist in defendants' medical care system.

■ In the area of medical care, defendants violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of the inmates. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Prison officials cannot be held liable for negligently providing inadequate medical treatment. *Id.* at 106, 97 S.Ct. at 292. They can be held liable, however, for any deliberate indifference that may occur, whether this indifference "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05, 97 S.Ct. at 291–92 (footnotes omitted). As this last quotation from the Supreme Court's opinion in *Estelle* indicates, the deliberate indifference standard requires a court to judge, at least to a limited extent, the quality as well as the quantity of medical care provided to an inmate population. *See id.* at 104 n. 10, 97 S.Ct. at 291 n. 10.

■ In their motion, however, defendants do not analyze the quality of the care they provide the plaintiff class. The Court is impressed with the amount of money defendants spend on medical care and with the number of staff they have hired in pursuit of that endeavor. These cold figures do not, though, entitle defendants to a judgment on plaintiffs' medical care claim. Absent undisputed evidence that defendants' medical staff are not deliberately indifferent to the plaintiffs' serious medical needs, the Court will deny defendants' motion for summary judgment on this issue.

VI. *Food*

Defendants' fifth motion for partial summary judgment concerns plaintiffs' claims that "[t]he food service areas at all three prisons are infested with insects and rodents," that food is "served at unsafe temperatures," and that "[o]verall conditions in the food service areas and milk pasteurization operations at Jackson and Marquette constitute public health hazards." First Amended Complaint ¶ 48. Defendants argue that they are entitled to

judgment on plaintiffs' claim because the food served at the subject institutions is nutritionally adequate and because plaintiffs have failed to allege that any inmates have suffered any serious illness or have died from eating the food. Plaintiffs contend in response that inmates have suffered from food poisoning at one of the subject institutions; that numerous inmates have indicated the food has made them ill; that sanitation experts have detailed defendants' problems with food sanitation and food temperatures; and that the provision of unsanitary food and the maintenance of dangerous conditions of food preparation and service can violate the inmates' constitutional rights.

■ The Court will deny defendants' motion for summary judgment on this issue. Plaintiffs could have made their claim more specific. The issue they raise, however, is not whether defendants serve nutritionally adequate food, but rather whether the food is safe for them to eat. Food is one of the basic necessities of life protected by the Eighth Amendment. *See Walker*, 771 F.2d at 926. The Court does not believe, moreover, that plaintiffs' claim is deficient because they have failed to allege that any inmates have suffered serious illness or have died from eating defendants' food. The Court need not wait until an inmate has died before acting to protect plaintiffs' constitutional rights. Defendants have not attempted to rebut plaintiffs' contentions that the food preparation and service facilities are unsanitary and that defendants serve food at unsafe temperatures. The Court therefore sees no basis for granting the motion for summary judgment at this time, and will enter an order denying it.

VII. *Fire and Smoke Hazards*

Defendants' next motion for partial summary judgment concerns plaintiffs' claim that conditions at the subject institutions expose the inmates to an unreasonable risk of harm from fire and smoke. They argue in support of their motion that they have taken numerous steps to improve fire safety protection at the subject institutions and

that no inmate has suffered injury from a fire at any of the institutions. Defendants support their factual assertions with an affidavit from the Special Projects Manager who has been involved in implementing the fire safety provisions of the *United States v. Michigan* Consent Decree. Plaintiffs respond that defendants have not yet implemented all of the fire safety measures they discuss in their motion, and further contend that recent reports by the Independent Expert in the *United States v. Michigan* proceeding and by their own fire safety expert indicate that unconstitutional conditions exist at the subject facilities.

■ Under the Eighth Amendment "[p]risoners have the right not to be subjected to the unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions." *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir.1985). They are not, however, entitled to a risk-free environment. The Court finds significant merit in defendants' motion. I must deny it, though, because defendants did not adequately support it in accordance with rule 56(e). This rule provides in part that "[s]upporting ... affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In his affidavit, Mr. Walter does not state the basis for his knowledge concerning all of defendants' fire safety efforts, and more particularly does not state that he has personal, admissible knowledge of all of the facts stated in his affidavit. He asserts, for example, that "evacuation plans have been prepared and posted throughout the institutions" and that "exits are kept clear and available for use." Affidavit of George Walter ¶¶ 5 & 8. He does not state, however, whether he has personal knowledge of these facts, or rather learned of them from other sources. Defendants may have been able to support their motion adequately with affidavits from persons closer to the institutions, such as the institutional fire safety inspectors. They did not do so, however, and the Court must deny their motion for summary judgment on this issue. I also observe, moreover, that as stated in plaintiffs' response, there is doubt whether defendants are fully implementing all of the measures stated in Mr. Walter's affidavit.

## VIII. *Overcrowding*

Defendants' seventh, and most significant, motion for partial summary judgment concerns plaintiffs' claim that the subject institutions are unconstitutionally overcrowded. The Court believes that plaintiffs' complaint raises two issues in this regard: (1) whether defendants' institutions are overcrowded, and (2) if they are, whether the overcrowding violates the inmates' constitutional right to be free from cruel and unusual punishment. Defendants argue that the subject facilities are not overcrowded in the cell (maximum security and close custody) areas, and that the minimum security dormitories are only slightly overcrowded. They further contend that whatever overcrowding does exist is not unconstitutional under the Supreme Court's decision in *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Plaintiffs respond that the overcrowding, at least in the minimum security areas, is significant and drastically affects other areas of concern, such as the classification system, recreational opportunities, medical and mental health services, and violence.

■ The Court believes that defendants' motion has substantial merit, at least as it concerns the cell blocks. Much of plaintiffs' concern, moreover, appears to be directed at conditions at institutions that are not covered by this suit. The Court cannot grant defendants' motion at this time, however, because as was the case with many of their other motions for partial summary judgment, defendants failed to support this motion in accordance with rule 56(c). In support of their motion, defendants attached a "Michigan Department of Corrections Summary Client Census Report" dated February 5, 1986. This report is not, as rule 56(c) requires, a pleading, deposition, answer to interrogatory, admission, or affidavit. The Court therefore

must find that defendants have failed to meet their initial burden of establishing that there exist no genuine issues of material fact on the overcrowding issue. In addition, defendants have failed to submit any affidavits or other documentation assessing the effects of any overcrowding that does exist in the subject facilities. The Court accordingly will enter an order denying defendants' motion.

## IX. *Classification*

Defendants seek in their next motion for summary judgment to have the Court render judgment on plaintiffs' claims that "[i]nmates are not properly classified," that "[o]vercrowding results in inappropriate and frequently unsafe placements for inmates," and that "[c]lassification decisions are primarily determined by the availability of an inmate bunk rather than individual inmate characteristics." First Amended Complaint ¶ 54. Defendants argue that they have the discretion to devise and to implement any classification system they desire as long as it is not completely irrational, and that the Court cannot grant plaintiffs' claim for relief under the theory that the allegedly inadequate classification system, considered in conjunction with other conditions of confinement, creates unconstitutional conditions of confinement. *See Hoptowit v. Ray*, 682 F.2d at 1255 (finding that if misclassification "does not itself create a deprivation in one of the areas that the Eighth Amendment protects, it cannot be held an Eighth Amendment violation"). In addition, defendants contend that misclassification by itself does not violate the Eighth Amendment. *Id.* at 1256; *see Ramos v. Lamm*, 639 F.2d 559, 566–67 (10th Cir.1980) (finding that shortcomings in the area of classification "are not of constitutional dimension"), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). The Court believes that defendants' motion has substantial merit. I must decline to grant it at this time, however, for two reasons.

First, defendants' motion and supporting documentation discuss only the structure of the classification system and, except for one general comment in Mr. Kime's affidavit that the policy has "proven to be an effective tool in meeting the increasing Michigan prison populations," not its implementation, and therefore is inadequate to refute plaintiffs' claim that defendants do not follow the system and do place inmates in unsafe living areas. The Ninth Circuit indicated in *Hoptowit v. Ray* that a classification system may violate inmates' constitutional rights if it creates "a deprivation in one of the areas that the Eighth Amendment protects," such as personal safety. Although plaintiffs' claim appears to be tenuous, the Court cannot grant defendants' motion at this time because they have not established that there exist no genuine issues of material fact with respect to such claim. To consider defendants' motion further, the Court would have to receive appropriate submissions (see rule 56(c)) establishing that defendants are not operating their classification system in a manner that significantly endangers the safety of inmates. *See Grubbs v. Bradley*, 552 F.Supp. 1052, 1124 (M.D.Tenn.1982) ("if the proof shows a sufficient connection between an improper classification system and a protected constitutional right, such as the right to be reasonably free from excessive violence, there may be just cause for court intervention in the proper case").

Secondly, plaintiffs present an interesting argument that state law grants them a liberty interest in being classified according to specific criteria, and that defendants are violating that liberty interest by "overriding" the classification system due to lack of adequate bedspace. The Court considers this to be a ground for relief distinct from the issue discussed in the preceding paragraph; it is based on the due process clause of the Fourteenth Amendment rather than the cruel and unusual punishments clause of the Eighth Amendment. I cannot decide its validity at this time, however, for two reasons. First, apparently neither party has provided me with a copy of the administrative rule on which plaintiffs rely, Rule 791.4401(1). Secondly, defendants have not responded to plaintiffs' analysis of this issue and the Court is hesitant to

decide its validity without the benefit of defendants' input. I therefore will decline to grant defendants' motion for summary judgment on the classification issue, at least at this time.

### X. *Mental Health Care*

■ Defendants' final motion for partial summary judgment concerns plaintiffs' claim that defendants are deliberately indifferent to their serious mental health needs. Defendants argue that the undisputed evidence demonstrates that they are not deliberately indifferent to the inmates' serious mental health needs, and offer in support of this assertion an affidavit from their Acting Assistant Health Care Administrator that details the mental health care assistance available to inmates and indicates that defendants spend $16,887,500 per year in funding mental health care professionals. As legal support for their motion, defendants cite and discuss numerous cases in which courts have approved significantly lower levels of staffing and funding as being constitutionally adequate. Plaintiffs respond that there is substantial evidence that despite their impressive numbers, defendants do not provide inmates constitutionally adequate care for their serious mental health needs.

■ As was the case with defendants' motion for partial summary judgment on the issue of medical care, the Court believes that defendants have not adequately supported this motion. Once again, the Court is impressed with the efforts defendants have taken in this area, particularly in comparison to the situations other courts have found to be constitutionally acceptable. Defendants, however, have not supported their claim that they provide mental health care that is of sufficient quality to pass constitutional scrutiny. The Court agrees with defendants that the Constitution does not require the best care but rather only that reasonable professional judgment is exercised. Plaintiffs dispute whether defendants meet even this minimal standard of care, however, and absent supporting documentation from defendants establishing that no genuine issue of material

fact exists on this issue I cannot grant their motion for partial summary judgment. The Court accordingly will enter an order denying the motion.

### ORDER

In accordance with the opinion dated August 20, 1987;

IT IS HEREBY ORDERED that plaintiffs' motion for sanctions under rule 11 of the Federal Rules of Civil Procedure is GRANTED in part and DENIED in part; plaintiffs are awarded $6,165.00 as a sanction against the defendants; they are awarded an additional $2,500.00 as a sanction against defense counsel; this latter sanction is imposed against defense counsel personally and is not to be paid by such counsels' clients;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding jobs, idleness, rehabilitation, and education is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding recreational activities is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding sanitation is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding medical care is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding unsafe food is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding fire and smoke hazards is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding overcrowding is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding classification is DENIED;

IT IS FURTHER ORDERED that defendants' February 25, 1986 motion for partial summary judgment regarding mental health care is DENIED.

## ATTACHMENT 1

United States District Court Western District of Michigan Southern Division.

Feb. 25, 1985.

### MOTION TO DISMISS RE: PAST VIOLATIONS

NOW COME Defendants in their individual capacity, by and through their attorneys, Frank J. Kelley, Attorney General for the State of Michigan, and Thomas C. Nelson, Elaine D. Fischhoff, and Brian MacKenzie, Assistants Attorney General, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss the above reference cause of action to the extent the action seeks a declaratory judgment as to alleged past violation of the Constitution or federal law as being barred by the Eleventh Amendment, and unappropriate as a matter of law according to principles of equity.

> Respectfully submitted,
> FRANK J. KELLEY
> Attorney General
> s/ Brian MacKenzie
> Thomas C. Nelson (P25147)
> Assistant Attorney General
> Elaine D. Fischhoff (P24520)
> Assistant Attorney General
> Brian MacKenzie (P24097)
> Assistant Attorney General
> Business Address:
>> Corrections Division
>> Plaza One Building
>> 401 S. Washington Square
> Lansing, Michigan 48913
> Telephone: (517) 373-3474

### BRIEF IN SUPPORT OF MOTION TO DISMISS

### ARGUMENT

THE ELEVENTH AMENDMENT BARS DECLARATORY RELIEF AS TO ALLEGED PAST VIOLATIONS WHICH HAVE BEEN CURED.

Here a consent decree entered in *USA v. Michigan,* Docket No. G84-63 to which Plaintiffs were permitted to participate as amici has resulted in the correction or court ordered actions to correct many of the conditions of confinement complained of in Plaintiffs' Complaint. This court has insisted on compliance with the terms of the order.

Plaintiffs now seek declaratory relief regarding those conditions of confinement.

In *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) the court held that the Eleventh Amendment barred the requested declaratory judgment action over the past lawfulness of a respondent's actions where the same are not of a continuing nature.

It is submitted that this case is governed by *Green v. Mansour, supra* and that the Eleventh Amendment bars declaratory relief where:

a) it addresses alleged constitutional violations which are not of a continuing nature; and

b) it addresses alleged constitutional violations where the court has established a plan for correction of other alleged constitutional inadequacies and plaintiffs have been permitted to participate as amici in that proceeding and comment on compliance in circumstances specified by the court.

No valid purpose consistent with Eleventh amendment objectives is served by issuing a declaratory ruling.

### RELIEF

WHEREFORE, Defendants, under the authority of *Green v. Mansour, supra,* and alternatively pursuant to the discretionary power of the court pray that the court dismiss the action for declaratory judgment:

a) as to alleged constitutional violations which have been corrected; and

b) as to alleged constitutional violations which are subject to the consent decree in *USA v. Michigan* and corrections pursuant to terms of the decree and under control of this court.

**530**

Respectfully submitted,
FRANK J. KELLEY
Attorney General
s/ Brian MacKenzie
Thomas C. Nelson (P25147)
Assistant Attorney General
Elaine D. Fischhoff (P24520)
Assistant Attorney General
Brian MacKenzie (P24097)
Assistant Attorney General
Business Address:
     Corrections Division
     Plaza One Building
     401 S. Washington Square
     Lansing, Michigan 48913
Telephone: (517) 373-3474

ATTACHMENT 2

United States District Court Western District of Michigan Southern Division.

March 17, 1986.

REPLY TO "RESPONSE TO MOTION TO DISMISS REGARDING THE ARGUMENT THAT THE ELEVENTH AMENDMENT BARS DECLARATORY RELIEF AS TO ALLEGED PAST VIOLATIONS"

NOW COME Defendants, by and through their attorneys, Frank J. Kelley, Attorney General for the State of Michigan, and Thomas C. Nelson, Elaine D. Fischhoff, Brian MacKenzie and David G. Edick, and reply to Plaintiffs' "Response to Motion to Dismiss Regarding the Argument that the Eleventh Amendment Bars Declaratory Relief as to Alleged Past Violations", saying as follows:

1. The defense of the Eleventh Amendment is in the nature of an objection to subject matter jurisdiction which can be raised at any time. See Rule 12(h)(3) of the Federal Rules of Civil Procedure.

2. Defendants have sought to have the Court dismiss the case as it pertains to conditions of confinement which no longer exist or are currently being remedied. The purpose of the motion is to attempt to limit this case to those alleged violations which have not been remedied, and are not in the course of being remedied.

3. Plaintiffs are apparently asking that this court and Defendants spend weeks in trial addressing conditions that no longer exist and which are governed by an existing Consent Decree. Irrespective of the Eleventh Amendment, unless damages are an object, what possible purpose would be served by such a trial, since no meaningful injunctive or declaratory relief could be rendered?

4. Plaintiffs state that the Defendants are asking the Court to dismiss "premised on the naked claim that the Michigan system is constitutional". That statement by Plaintiffs was not made in good faith. If Plaintiffs are contending that none of the alleged conditions have been remedied under the Consent Decree and make such a claim consistent with their obligations to the Court and Defendants under Rule 11 of the Federal Rules of Civil Procedure, then the Plaintiffs should not object to the motion. However, if Plaintiffs acknowledge as Defendants contend that they must, that many of the alleged conditions have already been remedied or are being remedied under an existing Consent Decree, then the motion will dismiss all claims pertaining to those conditions which have been remedied or are being remedied and significantly narrow the scope of the trial.

5. Plaintiffs' response suggests that Plaintiffs would claim the right for example to spend perhaps days in trial on the alleged inadequacies of the old hospital facility at the Jackson Central Complex when by the time of trial a new hospital is complete, staffed and functioning. *Green v. Mansour* upon which Defendants rely holds that the interests of the Supremacy Clause have been vindicated in such circumstances and that hence the Eleventh Amendment bars the suit as to violations which are not continuing.

6. Plaintiffs have not taken seriously a very significant motion. Plaintiffs' response gives reason to fear that the trial is going to focus in large part on conditions that no longer exist. If the Court permits Plaintiffs to go forward in such a fashion, Defendants will be forced to spend days adducing evidence to show for example

that the former health care delivery facilities met constitutional minimums. The Plaintiffs' position simply does not make any sense and is extremely wasteful of state and judicial resources.

7. Given the Plaintiffs' apparent position, i.e. that granting the motion is tantamount to dismissing the whole suit, Defendants respectfully suggest that if the Court grant Defendants' Motion but finds that Plaintiffs' position has arguable merit that the Court certify its ruling under the Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b) and stay proceedings until resolution by the Court of Appeals.

RELIEF

WHEREFORE, Defendants pray that this Court grant the Motion and certify its ruling under 28 U.S.C. § 1292(b) granting a stay of proceedings until resolution by the Court of Appeals.

Respectfully submitted,

FRANK J. KELLEY
Attorney General
s/ Brian MacKenzie

Thomas C. Nelson (P25147)
Assistant Attorney General
Elaine D. Fischhoff (P24520)
Assistant Attorney General
Brian MacKenzie (P24097)
Assistant Attorney General
David G. Edick (P30780)
Assistant Attorney General

Business Address:

Corrections Division
Plaza One Building
401 S. Washington Square
Lansing, Michigan 48913

Telephone: (517) 373-3474