## Neal K. MADDOX
### v.
### E.F. HUTTON MORTGAGE CORP.; E.F. Hutton Group, Inc.; and Shearson Lehman Hutton, Inc.

No. 3:88–0552.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 30, 1989.

David L. Franklin, Luther, Anderson, Ruth & Speed, Chattanooga, Tenn., Hal D. Hardin, Dudley M. West, Nashville, Tenn., for plaintiff.

Kenneth H. King, Jr., Boult, Cummings, Conners & Berry, Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

On June 12 and 13, 1989, this case was tried to a jury. Plaintiff sought $450,000 in compensatory damages, alleging that defendants had breached a written employment agreement. Under the purported agreement, plaintiff had a six-tear term of employment and was entitled to substantial severance benefits in the event he was terminated before the expiration of the term. The only evidence presented to support plaintiff's claim was plaintiff's own testimony and a document purporting to be the agreement executed between plaintiff and defendants. Plaintiff's testimony was directly contradicted by the testimony of Arthur F. Mueller, a purported signatory to the document, and of Mr. Mueller's executive secretary, Ms. Patsy Peterson. Expert testimony also strongly supported the defendants' contention that the purported written employment agreement was not authentic. The jury determined that no written employment agreement was ever executed between plaintiff and defendants, and returned a defense verdict. This verdict was consistent with the overwhelming weight of the evidence.

After the verdict, defendants filed a motion to amend the judgment to include imposition of Rule 11 sanctions against plaintiff, his counsel, or both. Because of the potential conflicts of interest raised by this motion, plaintiff's trial counsel, Mr. David Franklin, on motion, was permitted to withdraw his representation. Defendants allege that the proof at trial demonstrated that plaintiff knew the purported employment agreement was neither authentic nor legitimate, and that Mr. Franklin, after reasonable inquiry, should have concluded that plaintiff's reliance upon the document was not well-grounded in fact. Defendants allege that plaintiff's attorney violated Rule 11, Fed.R.Civ.P., in filing the complaint and in continuing to assert the validity of the agreement after defendants' proof came to light. Mr. Franklin has responded vigorously to this motion, arguing not only that it was reasonable to believe plaintiff's story, but also that to hold otherwise would create an insurmountable tension between the requirements of Rule 11 and counsel's professional responsibilities to his client. Plaintiff has not responded to the motion.

For the reasons stated below, the Court finds that plaintiff's trial counsel did not violate Rule 11 and therefore sanctions under the rule against either counsel or plaintiff are not appropriate. On the other hand, sanctions against the plaintiff for instituting and maintaining this action in bad faith appear to be appropriate under this court's inherent equity power.

## A. SANCTIONS UNDER RULE 11.

Under Rule 11, Fed.R.Civ.P., the person who signs a pleading, motion, or other paper filed with the court, certifies that he has conducted a reasonable inquiry into the factual and legal basis for the filing, and that the substance of the filing is well-grounded in fact and law. If, after reasonable inquiry, a competent attorney could not reasonably have concluded that the filing was well-grounded in fact and law, the attorney who signs the document violates the rule. *See, e.g.*, Rule 11, Fed.R.Civ.P., Advisory Committee's Note to the 1983 Amendment; *Century Products, Inc. v. Sutter*, 837 F.2d 247, 251 & 53 (6th Cir. 1988) (signing attorney's conduct measured by objective standard of reasonableness); *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221 (6th Cir.1986) (same); *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir.1987). Where the signer violates the rule, sanc-

tions are mandatory. *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391, 401 (6th Cir.1987).

■ Defendants' motion asks the Court to consider whether plaintiff's counsel conducted a reasonable pre-filing inquiry and whether, on the basis of that inquiry, it was reasonable to have believed that plaintiff's claims were well-founded in fact. Clearly, the evidence at trial demonstrated that plaintiff's claims were without factual foundation. But in determining whether there was a violation of Rule 11, this court "[is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the [paper in question] was filed]." *Id; Balfour Guthrie, Inc. v. Hunter Marine Transport,* 118 F.R.D. 66, 76 (M.D.Tenn.1987). The standard of reasonableness is objective, and depends upon the circumstances presented in each case. *See* Rule 11, Fed.R.Civ.P., Advisory Committee's Notes to 1983 Amendment. Where pre-filing research other than conversations with a client could objectively establish whether a claim was well-grounded in fact, mere reliance upon the client will not likely satisfy the rule's requirements. *See Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir.1986); *Balfour Guthrie,* 118 F.R.D. at 74. Extensive research alone will not save a claim that is without factual merit from the penalty of sanctions. *Knop v. Johnson,* 667 F.Supp. 512, 516 (W.D.Mich.1987), *quoting Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986). But where an attorney has conducted extensive pre-filing research, and files a document which is not contravened by admissions of the litigant or clear authority, sanctions will not likely be appropriate. *Cf. Greenberg v. Sala,* 822 F.2d 882, 887 (9th Cir.1987) (sanctions inappropriate where attorney spent 100 hours interviewing clients, reviewing records, and researching law, and where no admission by litigant undermined the factual basis of the claim); *Frazier v. Cast,* 771 F.2d 259, 265 (7th Cir.1985) (sanctions appropriate where facts asserted in response to motion for summary judgment were contradicted by litigant's deposition).

■ Under the circumstances presented in this case, the Court finds that plaintiff's trial counsel conducted a reasonable pre-filing inquiry and reasonably concluded that the complaint and other papers were well-founded in fact. Mr. Franklin and others in his office spent at least 190 hours investigating, preparing and trying plaintiff's case. In an initial interview, plaintiff provided Mr. Franklin with a document purporting to be the employment agreement at issue, and explained in detail the nature of his complaint against his former employer. After the interview, Mr. Franklin's office began its investigation of the matter. That investigation established that plaintiff had in fact worked for E.F. Hutton Mortgage Corporation (EFHMC), that the purported signatories to the document were associated with the defendants at the time the document was allegedly executed, that EFHMC no longer existed, and that Arthur Mueller, the former president of EFHMC and one of the signatories of the document in question, was no longer associated with the defendants. All of this was consistent with plaintiff's story.

The difficulty in this case arises out of the fact that the credibility of the opposing sides was critical to any assessment of the evidence. In his interviews with counsel, plaintiff explained to Mr. Franklin that the employment agreement memorialized his understanding with Arthur Mueller concerning plaintiff's compensation from EFHMC. He explained that he was to receive in addition to his salary a commission based upon business which plaintiff originated, and that those potential commissions were so substantial that the severance benefits were not out of line with plaintiff's anticipated compensation. Plaintiff also explained that Mr. Mueller was responsible for the drafting and typing of the contract and that Mr. Mueller handled the correspondence necessary to obtain Mr. Bagley's signature. Plaintiff also explained that he had not pursued the contract claim earlier because he had been pursuing an age discrimination claim. In general, Mr. Franklin found plaintiff to be credible, a conclusion which was confirmed

to some extent by the results of Mr. Franklin's investigation and by news releases of mismanagement and unethical practices under the E.F. Hutton umbrella.

Defendants argue that plaintiff's claims were patently incredible. Defendants base their argument on the highly suspicious appearance of the purported employment agreement, the confirmation by a forensics expert that the document was an inauthentic collage, the specific and adamant denials of defendants' representatives and of the purported signatories that the document was ever executed, the testimony of Mr. Mueller's secretary that she never typed the document, and the lack of any reference to the agreement in plaintiff's personnel file. No doubt, these factors presented a formidable, indeed insurmountable, defense to plaintiff's claim. But it is not per se unreasonable to initiate a law suit and pursue a possible claim where the defendant has a strong defense. *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 794 (6th Cir.1988). Indeed, under these circumstances, it was reasonable for Mr. Franklin to pursue plaintiff's claim. While the document in question was suspicious, according to plaintiff's story, it was produced by Arthur Mueller. Consequently, Mr. Mueller's testimony appeared to be necessary to explain the document's appearance. When Mr. Mueller denied ever seeing or executing the document, plaintiff's counsel was presented with a case which boiled down to a swearing contest: either his client or Mr. Mueller was lying. Mr. Franklin had an ethical obligation to resolve any reasonable doubts concerning his client's credibility in favor of his client. *See* Tenn.Court Rules Ann., Rules of the Supreme Court, Rule 8, EC 7–6. Furthermore, plaintiff consistently maintained his initially credible version of the story, and the defendant's evidence was either impeachable because of personal or financial interest, or explainable in a manner consistent with plaintiff's account. Absent the clarity of hindsight, a competent attorney could reasonably have concluded that the plaintiff had a valid claim.

Therefore, Mr. Franklin did not sign any pleadings, motions or other papers in this action in violation of Rule 11. Because there was no violation, sanctions are not appropriate under Rule 11.

## B. SANCTIONS UNDER THE COURT'S INHERENT EQUITY POWER.

■ This court has inherent equity power to award attorneys' fees against a party or counsel for "bad faith" in bringing an action, asserting a defense or causing an action to be brought, or for bad faith occurring during the course of the litigation. *In re Ruben*, 825 F.2d 977, 983 (6th Cir.1987); *Shimman v. International Union of Operating Eng'r, Local 18*, 744 F.2d 1226, 1230 (6th Cir.1984). *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–67, 100 S.Ct. 2455, 2464–65, 65 L.Ed.2d 488 (1980). As an exception to the "American rule" that a prevailing may not ordinarily recover attorneys' fees in the absence of contract or statute, such an award is appropriate only in a narrow range of circumstances. *Cf., e.g., Shimman*, 744 F.2d at 1228–1233, and cases cited therein. The mere fact that a case is without merit does not justify such an award. *See e.g., Miracle Mile Associates v. Rochester*, 617 F.2d 18, 21 (2d Cir.1980). Rather, the award must be based upon a finding that an unfounded action or defense is brought or maintained in "bad faith, vexatiously, wantonly, or for oppressive reasons." *See Shimman*, 744 F.2d at 1233. *Accord Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975).

In this case, the preponderance of the evidence presented suggests that plaintiff instituted and maintained his claim in bad faith, for vexatious and oppressive purposes. It appears from the evidence that plaintiff put together a document purporting to be an employment agreement between him and defendants when no such agreement ever existed, and that he attempted to recover under the agreement even though he knew that it was fatuous. He apparently duped his attorney into carrying out his plan by concocting a somewhat plausible story to explain the document upon which he relied, and attempted to dupe this court and the jury through

maintaining the action and testifying in open court. Although the jury effectively determined that plaintiff was lying and returned a defense verdict, the plaintiff succeeded in costing defendants and this court substantial expense and time in defending and hearing his frivolous claim. Consequently, the Court believes that this case presents appropriate circumstances for assessing against plaintiff the defendants' attorneys' fees incurred as a result of defending this action.

Due process requires that plaintiff receive an adequate opportunity for a hearing on the record before he is assessed attorneys' fees. *See In re Ruben,* 825 F.2d at 985. Consequently, because plaintiff apparently instituted and maintained this action in bad faith, plaintiff shall appear before this court to show cause why he should not be sanctioned under the court's inherent equity power.

## C. CONCLUSION.

For the foregoing reasons, defendants' motion to amend the judgment in this case to include Rule 11 sanctions is denied. The plaintiff shall appear before this court to show cause why, under its inherent equity power, this court should not assess defendants' attorneys' fees against plaintiff for instituting and maintaining this action in bad faith.